UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

JEFFERY BURTON                                                                                    PLAINTIFF
ADC #174432

V.                                    No. 4:21-CV-973-LPR-JTR

JACKSON, Warden, Varner Supermax
Unit, and SHIPMAN, Former Warden,
Varner Supermax Unit, ADC                                                         DEFENDANTS

### RECOMMENDED DISPOSITION

The following Recommended Disposition has been sent to United States District Judge Lee P. Rudofsky. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection; and (2) be received by the Clerk of this Court within fourteen (14) days of the date of this Recommendation. If you do not file objections, Judge Rudofsky may adopt this Recommendation without independently reviewing all of the evidence in the record. By not objecting, you may waive the right to appeal questions of fact.

### I.    Introduction

While he was incarcerated in the Varner Supermax Unit ("VSM") of the Arkansas Division of Correction ("ADC"), Plaintiff Jeffery Burton ("Burton") filed a *pro se* § 1983 Complaint and Amended Complaint. *Doc. 2; Doc. 5*. In those

pleadings, Burton alleges that he was locked in his VSM cell, 24 hours a day, for more than eight months, without being allowed to go outside for yard call. *Doc. 5*. Despite filing grievances about this matter, Burton alleges that nothing changed. *Id. at 6*.

Finally, Burton alleges that: (a) he complained to unknown VSM staff "about the mosquitoes, ants, and spiders that are constantly biting [him]" in his cell, but the staff refused to "spray [his cell] for insects or rodents" (*Id. at 4*; *Doc. 2 at 4*); and (b) his cell had no air conditioning, and, in the summer, he was exposed to "unbearable heat" (*Doc. 5 at 4*).

After screening Burton's claims, the Court allowed him to proceed with his conditions of confinement claims against Defendants Warden Jackson ("Jackson"), former Warden Shipman ("Shipman"), and the "Doe Defendants."[1]

Defendants have now filed a Motion for Summary Judgment, Brief in Support, and Statement of Undisputed Facts arguing that Burton's claims must be dismissed, without prejudice, because he failed to exhaust his administrative remedies before he initiated this action. *Docs. 14–16*.

---

[1] Burton's Complaint and Amended Complaint alleged only that "staff" failed to monitor his cell's temperature or spray his cell for pests. His explanation for not providing their names is that: "I do not know the correct staff names to further complain," and "I am not familiar with the staff at this facility to be able to name all parties involved." *Doc. 5 at 4 & 6*. Taking Burton's allegations to be true that he was locked in his VSM cell 24 hours a day, for more than 8 months, his explanation, on its face, was plausible. Accordingly, I allowed Burton to pursue his claims against these unknown staff members by characterizing them as "Doe Defendants." *Doc. 6*.

2

Burton did not file a Response or a Statement of Disputed Facts. *See Doc. 17*. Accordingly, the Court should consider all the facts alleged in Defendants' Statement of Undisputed Facts (*Doc. 16*) to be undisputed. *See* Fed. R. Civ. P. 56(e)(2); Local Rule 56.1(c).

For the reasons stated below, Burton failed to exhaust his administrative remedies on his claims against Defendants Jackson, Shipman, and the Doe Defendants. Accordingly, their Motion for Summary Judgment (*Doc. 14*) should be granted, and this action should be dismissed, without prejudice.[2]

## II.   Discussion

### A.   To Fully and Properly Exhaust His Administrative Remedies, Burton was required to Comply with the ADC's Policies, Directives and Rules Governing Exhaustion

The Prison Litigation Reform Act ("PLRA") requires prisoners to exhaust their administrative remedies before filing a § 1983 action: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C.

---

[2] Summary judgment is appropriate when the record, viewed in a light most favorable to the nonmoving party, demonstrates that there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 249–50 (1986). The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact. *Celotex*, 477 U.S. at 323. Once that has been done, the nonmoving party must present specific facts demonstrating that there is a material dispute for trial. *See* Fed R. Civ. P. 56(c); *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011).

§ 1997e(a). The purposes of the exhaustion requirement include "allowing a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record." *Jones v. Bock,* 549 U.S. 199, 219 (2007); *see also Woodford v. Ngo*, 548 U.S. 81, 88-91 (2006).

Importantly, "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones,* 549 U.S. at 218; *see also Woodford*, 548 U.S. at 90 (explaining that administrative exhaustion "means using all steps that the agency holds out, and doing so properly so that the agency addresses the issues on the merits"). Thus, *before* initiating this action, Burton was required to fully and properly exhaust his administrative remedies in accordance with the ADC's exhaustion requirements.

The ADC's directives and regulations governing exhaustion require that, as to each of his claims, a prisoner must: (1) "specifically name each individual involved;" (2) state only one problem or issue per grievance; and (3) include a "brief statement that is specific as to the substance of the issue or complaint to include the date, place [and] personnel involved or witnesses." *See Doc. 14-2*, ADC Administrative Directive 19-34 ("AD 19-34"), § IV(C)(4), (D)(2), & (E)(2). The grievance forms themselves also restate these instructions to ensure prisoners are

4

aware of them. *Id*. at Att. 1 ("Briefly state your one complaint/concern and be specific as to the complaint, date, place, name of personnel involved and how you were affected."). If an inmate intends to grieve more than one issue, he or she "must use a separate [grievance] form for each issue[, as] [o]nly one issue will be addressed in the response to a grievance." *Id.* at § IV(D)(2). Any [a]dditional problems/issues contained in the grievance will not be addressed and will not be considered as exhausted." *Id*. Finally, the ADC's policy cautions prisoners that, if they fail to "exhaust their administrative remedies *as to all defendants at all levels* of the grievance procedure … their lawsuits or claims may be dismissed immediately" under the PLRA. *Id.* at § IV(N) (emphasis added); *see also Id.* at § IV(C)(4) & (D)(2) (both advising inmates to fully exhaust a grievance *before* filing a lawsuit).

Finally, the ADC requires prisoners to fully and properly exhaust their grievances by processing through a three-step grievance review process. *Id.* at §§ IV(D)-(G). At Step One, a prisoner must initiate an information resolution raising his complaint and naming each officer or staff member against whom he is raising the complaint.[3] At Step Two, a prisoner must file a formal grievance raising the

---

[3] This Step One informal resolution must be submitted within fifteen working days after the incident giving rise to the complaint. *Doc. 14-2*, AD 19-34, §§ IV(D)–(G).

unresolved complaint describe in the informal resolution.[4] If the Step Two grievance is denied, a prisoner must file a Step Three appeal to the ADC Chief Deputy/Deputy/Assistant Director within five working days of the Warden's decision denying the grievance. *Id*.

### B.   The Undisputed Material Facts[5]

1.   April Gibson ("Gibson"), the ADC's Inmate Grievance Coordinator, reviewed Burton's grievance file for the relevant time period, June 2, 2021 through the date Burton filed this action, October 25, 2021.[6] According to Gibson's sworn Declaration, Burton did not *fully and properly* exhaust *any* grievances raising complaints related to the claims he is asserting in this action. *Doc. 14-1 at 6–8*.

2.   Gibson's sworn Declaration also states that Burton filed only two grievances during the relevant time period: (1) VSM21-01602; and (2) VSM21-01807. *Doc. 14-1 at 7*; *Doc. 14-4*; *Doc. 14-5*.

---

[4] The formal grievance must be filed within three working days of the denial of the informal resolution. The Warden of the unit, or his designee, is the decision maker on the Step Two grievance. *Id.*

[5] The source for these facts is the now uncontroverted Statement of Undisputed Facts filed by the Defendants (*Doc. 16*) along with its supporting documents: (1) the Declaration of ADC Inmate Grievance Coordinator April Gibson (*Doc. 14-1*); and (2) Burton's relevant grievance history (*Doc. 14-3; Doc. 14-4; Doc. 14-5*). All of those facts should now be considered undisputed for purposes of Defendants' Motion for Summary Judgment. *See* Fed. R. Civ. P. 56(e)(2); Local Rule 56.1(c).

[6] It appears Burton may have begun his incarcerations in VSM on or around June 2, 2021. However, because Burton did not respond to Defendants' Motion for Summary Judgment or Statement of Facts, Gibson's characterization of the "relevant time period" is undisputed.

3. In Grievance VSM21-01602, initiated on August 5, 2021, Burton complained about not receiving yard call, which is one of his claims in this action. *Doc. 14-1 at 7; Doc. 14-4*. However, after the VSM Warden found VSM21-01602 to be without merit, Burton did *not* appeal that decision to Step Three. *Doc. 14-1 at 7; Doc. 14-4*. Thus, Burton failed to exhaust VSM21-01602.

4. In Grievance VSM21-01807, initiated on September 8, 2010, Burton complained about losing items of his personal property. *Doc. 14-1 at 7*; *Doc. 14-5*. This complaint has nothing to do with the conditions of confinement claims Burton is asserting in this action. After the Warden found VSM21-01807 to be without merit, Burton did not appeal that decision to Step Three. *Doc. 14-1 at 7*; *Doc. 14-5*.

**C.   Based On These Undisputed Facts, Burton Failed to Fully and Properly Exhaust His Administrative Remedies On His Pending Claims**

The undisputed facts demonstrate that Burton filed only one grievance related to the conditions of confinement claims he is asserting in this action—VSM21-01602. However, Burton failed to pursue VSM21-01602 through *all* three steps of the ADC's grievance procedure. As a matter of law, he cannot rely on that grievance to show that he fully and properly exhausted his administrative remedies on his conditions of confinement claim. Accordingly, because Burton failed to fully exhaust his administrative remedies on the only claims he is asserting in this action, Burton's claims against all Defendants should be dismissed, without prejudice.

## III. Conclusion

IT IS THEREFORE RECOMMENDED THAT:

1. Defendants' Motion for Summary Judgment (*Doc. 14*) be GRANTED.

2. Burton's conditions of confinement claims against all Defendants be DISMISSED, without prejudice.

3. Judgment be entered accordingly, and this case, in its entirety, be CLOSED.

DATED this 28th day of February, 2023.

_____
UNITED STATES MAGISTRATE JUDGE